Filed 3/24/26; Modified and Certified for Pub. 4/17/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MICHELLE PAKNAD,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA,<br><br>Respondent;<br><br>INTUITIVE SURGICAL, INC., et al.,<br><br>Real Parties in Interest. | H052652<br>(Santa Clara County<br>Super. Ct. No. 19CV350641) |

This is the second mandate proceeding occasioned by two reports and investigative materials prepared by an attorney commissioned by defendants and real parties in interest, Intuitive Surgical, Inc. and Intuitive Surgical Operations, Inc., to investigate plaintiff and petitioner Michelle Paknad's claims of sexual harassment, gender discrimination, and unlawful retaliation as an Intuitive employee.

In the first proceeding, we concluded that despite a "relationship . . . giving rise to the attorney-client privilege and work product protections," Intuitive waived the privilege "by placing the scope and adequacy of the investigations at issue, . . . such that . . . disclosure of the material is ' "essential for a fair adjudication of the action." ' " (*Paknad v. Superior Court* (May 20, 2024, H050711) [nonpub. opn.] (*Paknad I*), quoting

*Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 128 (*Wellpoint*).) While we stopped short of holding that Intuitive had necessarily waived protection as to *all* the investigator's materials or core work product under Code of Civil Procedure 2018.030, subdivision (a),[1] we issued a peremptory writ directing the respondent court to "grant[] the motion [to compel production of the] . . . reports and related investigative materials," subject to an in camera review "to determine 'if some protection is warranted notwithstanding the waiver' . . . ." (*Paknad I*, *supra*, H050711, quoting *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 740 (*Costco Wholesale Corp.*) and citing *People v. Superior Court (Jones)* (2021) 12 Cal.5th 348, 366 (*Jones*).)

Before the respondent court, the parties disputed whether Intuitive's waiver of attorney work product protection extended to core work product. The court ultimately ordered disclosure of the reports and investigative materials subject to Intuitive's proposed redactions. Because the redactions excised all the investigator's factual findings, Paknad petitioned again for mandamus relief.

Having reviewed the proposed redactions of the records lodged with the respondent court, we will grant Paknad's second petition for writ of mandate.

## I. BACKGROUND

While still employed by Intuitive, Paknad made two formal complaints of discrimination, harassment, and retaliation—complaints that Intuitive retained attorney Andrea Kelly Smethurst to investigate. Smethurst interviewed witnesses, reviewed documents, and produced two reports containing her findings and conclusions. While a summary of the findings was conveyed to Paknad, Intuitive did not share with Paknad the underlying reports.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

After she was fired, Paknad sued the company and her former supervisors.[2]  In asserting avoidable consequences as an affirmative defense to Paknad's complaint, Intuitive cited the Smethurst investigations and touted their thoroughness and independence, stating "[d]efendant . . . thoroughly investigated every allegation that [p]laintiff presented by hiring an independent, outside investigator to conduct two investigations, interview numerous witnesses (some of which she interviewed several times), and review a large volume of documentary evidence."  (See *Paknad I*, *supra*, H050711.)

## A.     Paknad I

After the trial court denied her motion to compel production of the reports and investigative materials, Paknad petitioned this court for mandamus relief.  After the California Supreme Court directed us to issue an order to show cause why relief should not be granted, we granted the petition in part and ordered issuance of a peremptory writ directing the trial court to vacate its order denying Paknad's motion to compel "insofar as it relates to the Smethurst reports and related investigative materials, and to enter a new order granting the motion."  (See *Paknad I*, *supra*, H050711.)  We followed *Wellpoint*, *supra*, 59 Cal.App.4th 110, 128, concluding that once an employer puts the adequacy of an investigation directly at issue in response to an employee's lawsuit, that employer "cannot stand on the attorney-client privilege or work product doctrine to preclude a

---

[2] In her operative complaint, Paknad pleaded eight causes of action: (1) sex and gender discrimination—against Intuitive (Gov. Code, § 12940, subd. (a)), (2) quid pro quo sexual harassment—against Intuitive and former supervisors Jeroen van Heesewijk and Kevin Collins (Gov. Code, § 12940, subd. (j)), (3) hostile work environment sexual harassment—against Intuitive, van Heesewijk, and Collins (Gov. Code, § 12940, subd. (j)), (4) retaliation—against Intuitive (Gov. Code, § 12940, subd. (h)), (5) failure to take all reasonable steps necessary to prevent and correct discrimination, harassment, and retaliation—against Intuitive (Gov. Code, § 12940, subd. (k)), (6) wrongful discharge—against Intuitive, (7) violation of Labor Code section 1102.5—against Intuitive, and (8) negligent hiring, retention, and supervision—against Intuitive.

thorough examination of [the investigation's] adequacy." (*Paknad I*, *supra*, H050711.) But because we gathered from Intuitive's privilege log that some aspects of the reports and investigative materials would contain core work product (§ 2018.030, subd. (a)) that might exceed the scope of what Intuitive had put at issue, we authorized the respondent court to review materials in camera to determine "if some protection is warranted notwithstanding the waiver." (*Paknad I*, *supra*, H050711, citing *Jones*, *supra*, 12 Cal.5th at p. 366, inter alia.)

**B.** **_Subsequent Proceedings_**

After issuance of the writ, the parties contested the scope of *Paknad I*. According to Paknad, because we concluded that Intuitive had placed the Smethurst investigations at issue, core attorney work product is "waived as to every aspect of Plaintiff's workplace complaints" and "the only material" in the Smethurst reports that might still be entitled to work product protection are discussions of unrelated cases, or of "specific legal—as opposed to factual—issues or strategies." By contrast, Intuitive claimed we held that protection of core work product—meaning, the investigator's " 'findings, mental impressions, and conclusions regarding [P]laintiff's allegations of discrimination and retaliation' "—had not been waived and that all these items from the Smethurst reports "should be redacted and withheld from production."

The respondent court directed Intuitive to provide it with an unredacted copy of the Smethurst reports and related investigative materials, and a second copy identifying Intuitive's proposed redactions.

**1.** **_The Reports and Intuitive's Proposed Redactions_**

The 437 pages of purportedly unredacted materials comprised (1) Smethurst's two reports, dated May 29, 2018, and November 16, 2018; (2) documents (primarily e-mails) Smethurst reviewed in her investigations; and (3) Smethurst's interview notes.[3] The

---

[3] What Intuitive lodged with the respondent court as "completely unredacted versions of these materials" still included what Intuitive after oral argument on appeal

4

reports were both organized in five numbered parts: (I) Paknad's allegations; (II) identification of the witnesses interviewed and documents examined; (III) Smethurst's detailed summaries of witness interviews; (IV) Smethurst's factual findings; (V) Smethurst's conclusions, including her legal recommendations to Intuitive going forward.

Intuitive proposed redacting all Part IV's factual findings, substantive portions of Part V's conclusions, along with several other lines and paragraphs. Intuitive also proposed redacting a few documents in the underlying materials, including portions of e-mails and lines from the interview notes.

### 2. *In Camera Review and Order*

Upon in camera review of the materials and redactions, the court found Intuitive's redactions were all " 'an attorney's impressions, conclusions, opinions, or legal research or theories' and are therefore 'not discoverable under any circumstances.' " The court accepted Intuitive's redactions, vacated its prior denial of Paknad's motion to compel, granted the motion, and ordered Intuitive to produce the redacted reports and investigative materials to Paknad.

### C. *The Current Petition*

Paknad again petitioned for mandamus relief. After a panel of this court summarily denied the petition, the California Supreme Court granted Paknad's petition for review and transferred the matter with instructions to issue an order to show cause, specifying that "[t]he response to the order to show cause should address the application of *People v. Superior Court (Jones)* (2021) 12 Cal.5th 348, 361–364 . . . and *Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 126, 128."

---

acknowledged "inadvertently contained partial redactions to four e[-]mails." Intuitive has lodged with this court the now-unredacted e-mails.

5

## II.    DISCUSSION

Paknad argues that by permitting the redaction of all factual findings from the investigator's reports, the respondent court failed to follow *Jones* and this court's mandate in *Paknad I*. Specifically, Paknad contends that the court erred in limiting its in camera review solely to whether the redacted materials constituted attorney work product under section 2018.030, subdivision (a), without further considering the scope of waiver. Having reviewed the materials and redactions at issue, we agree, although we construe the scope of Intuitive's waiver more narrowly than Paknad has argued.

### A.    *Waiver of Attorney Work Product Protection*[4]

Preliminarily, both Paknad and Intuitive misstate the scope of our opinion in *Paknad I*. In its brief submitted before the in camera review, Intuitive represented to the respondent court that we "held that Intuitive's 'outside counsel's findings, mental impressions, and conclusions regarding [P]laintiff's allegations of discrimination and retaliation' had not been waived, such that they should be redacted and withheld from production." Intuitive reiterated this position in its answer to our order to show cause, contending that this court had "contemplated 'conclusion' and 'finding' as identical concepts" and had "describ[ed] conclusions and findings interchangeably."

We do not recognize our prior opinion in Intuitive's characterization, and Intuitive's pincites do not support its assertions. We neither suggested that findings and

---

[4] Intuitive also contends that Paknad's contention is barred by the law of the case, the doctrine that " 'prevents parties from seeking reconsideration of an issue already decided absent some significant change in circumstances.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1505). But Paknad does not seek reconsideration of an already decided issue, merely clarification of the scope of work product protection Intuitive may still claim despite our conclusion that Intuitive put at issue the adequacy of Smethurst's investigations. And even if the law of the case were implicated here, we take the Supreme Court's citations to *Jones* and *Wellpoint* in transferring the matter as directing consideration of the scope of work product protection in view of Intuitive's waiver.

6

conclusions were synonymous nor authorized the continued withholding of Smethurst's factual findings. What Intuitive in the respondent court mischaracterized as what we "held" was merely our quotation of Intuitive's own contention: "In its privilege logs, Intuitive describes the Smethurst reports as '[i]nvestigation report[s] prepared by outside counsel summarizing outside counsel's findings, mental impressions, and conclusions regarding [p]laintiff's allegations of discrimination and retaliation.' " (*Paknad I*, *supra*, H050711.) What Intuitive pincites in its briefing before us now is our conclusion—without access then to the reports themselves—that "[b]ased on this description [in Intuitive's privilege log], at least *some aspect of the reports*" may properly be withheld. (*Ibid*., italics added.) This is not a holding that Smethurst's factual findings may be withheld.

Nor do we agree with Paknad that our prior opinion sweeps so broadly as to permit redactions only of "such limited material[s] that [are] unrelated to [Smethurst's] workplace investigations." Paknad relies on *Jones* for her maximalist interpretation of our opinion, but *Jones* does not stand for the blanket proposition that any waiver of work product protection requires disclosure of *all* otherwise protected matters. (See *Jones*, *supra*, 12 Cal.5th at p. 353.) Rather, *Jones is* entirely consistent with the proposition that the scope of a waiver turns on what the party has placed "at issue." (*Id.* at p. 353.) Indeed, *Jones* cautioned that the question of waiver is an " 'intensely practical one,' " and that " '[w]hat constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances' " of each case. (*Id.* at p. 363 & fn. 11.)

In *Jones*, the prosecutor defended against a *Batson/Wheeler* claim by relying on an undisclosed juror rating system as the purportedly nondiscriminatory basis for his challenged strikes. The Supreme Court held that the prosecutor had thereby put the rating system itself at issue, such that he had "impliedly waived any claim of work product protection over notes containing information *about the system*." (*Jones*, *supra*, 12 Cal.5th at p. 348, italics added.) So too here: Because, as we explained in *Paknad I*,

7

Intuitive's answer and interrogatory responses put at issue the scope and adequacy of Smethurst's investigations, Intuitive's waiver of work product protection extends to those matters. (See *Paknad I*, *supra*, H050711 ["Intuitive has directly placed at issue questions relating to the investigations' scope and adequacy"].)[5]

We recognize that much of the parties' dispute in these proceedings centers upon whether in *Paknad I* we intended to find a waiver of work product protection, as well as the attorney-client privilege. And our disposition's bracketed reference to only the attorney-client privilege obscured our observation elsewhere in the opinion that Intuitive, "by placing the scope and adequacy of the investigations at issue," made "disclosure of the materials . . . necessary for a fair adjudication of the action." (*Paknad I*, *supra*, H050711.) "Although the work product statute [section 2018.030, subdivision (a)] does not directly address the issue of waiver, it is well established that work product protection, like other forms of privilege, can be waived through conduct." (*Jones*, *supra*, 12 Cal.5th at p. 362.) Consistent with that proposition, *Wellpoint* makes clear that *both* the attorney-client communication and work product protection are waived when a party elects to defend itself by putting otherwise privileged information at issue. (See *Wellpoint*, *supra*, 59 Cal.App.4th at p. 128 [holding that if a defendant employer "hopes to prevail by showing that it investigated an employee's complaint and took action appropriate to the findings of the investigation . . . it does so with the understanding that the attorney-client privilege *and the work product doctrine* are thereby waived" (italics added)].) And *Jones* itself confirms that even core work product is subject to waiver when the beneficiary of that protection puts it at issue. (*Jones*, at pp. 365–366 [holding that prosecutor waived work product protection as to his juror rating system by relying on that undisclosed system to defend his peremptory challenges as nondiscriminatory].)

---

[5] Paknad appears to recognize that at least some aspects of the Smethurst reports, such as "pure legal advice," remain outside the scope of Intuitive's work product waiver.

Indeed, based on *Jones* and *Wellpoint*, counsel for Intuitive conceded at oral argument that it had waived attorney work product protection and that the sole remaining issue is the scope of that waiver. Intuitive's concession is well taken.

As in *Paknad I*, we follow *Jones* and *Wellpoint*. We clarify that Intuitive, by its voluntary conduct, has waived attorney-client privilege *and* attorney work product protection as to (1) all Smethurst's factual findings about Paknad's allegations of discrimination, harassment, or retaliation, and (2) information—whether in Smethurst's reports or the underlying investigative materials—relevant to the scope or adequacy of Smethurst's investigation of Paknad's allegations.

## B. *Scope of Redactions*

Although we have every confidence that this clarification of our holding in *Paknad I* will resolve any ambiguity for the respondent court, we will for the parties' benefit address Intuitive's alternative arguments for accepting its proposed redactions.

### 1. *Intuitive's Legal Theory for Limiting Disclosure*

Intuitive argued for the first time during oral argument that *Southern Cal. Gas Co. v. Public Utilities Com.* (1990) 50 Cal.3d 31, *United States v. Nobles* (1975) 422 U.S. 225, and *Jones*, taken together, support limiting the scope of Intuitive's disclosure obligations not by what the company put at issue but by whether what it has since disclosed will suffice for Paknad to meet Intuitive's avoidable consequences defense at trial. Leaving aside the pragmatic challenges posed by this proposal, we do not read these cases to support Intuitive's proposed limitation. *Southern Cal. Gas Co.* addressed the antecedent issue of waiver—whether the company had "place[d] in issue its privileged communications," such that the information is "vital to a fair adjudication in th[e regulatory] proceeding"—not the precise contours of the waiver's scope. (*Id*. at

9

pp. 42–43.)[6] And *Nobles* and *Jones* both framed the issue of waiver not in terms of need, but of what the holder of the privilege had voluntarily put at issue. (See *Jones*, *supra*, 12 Cal.5th at p. 365 [information relating to undisclosed juror rating system waived because "the striking attorney has placed in issue [that] information"]; *Nobles*, at p. 239 ["by electing to present the investigator as a witness, [defendant] waived the privilege with respect to matters covered in his testimony"].)

We accordingly decline Intuitive's belated invitation to limit the disclosure of the Smethurst reports and investigative materials based on a pretrial projection of whether disclosures to date will be sufficient to meet Paknad's needs at trial. We instead focus on the scope of the waiver—what Intuitive has voluntarily put at issue through its assertion of the avoidable consequences defense.

### 2. *Factual Findings*

Paknad challenges Intuitive's wholesale redaction of all factual findings from the Smethurst's reports. These factual findings represent Smethurst's interpretation and weighing of the available evidence, her assessment of the credibility of the witnesses, and her determination of whether Paknad's factual allegations were substantiated. The relevance of these factual findings to the scope and adequacy of the investigations is undisputed. They are squarely within the scope of Intuitive's waiver.[7]

---

[6] Having resolved this antecedent question in *Paknad I*, *supra*, H050711 we will not revisit it here, particularly in light of Intuitive's concession of waiver.

[7] To the extent Smethurst's report includes limited findings about a third party complainant, Paknad allows that these are "arguably within . . . the trial court's appropriate discretion to redact" but posits that even those findings "may have had some bearing" on Paknad's complaints. As we have explained, the issue is whether these findings about a third party's complaints bear on the scope and adequacy of Intuitive's investigation of Paknad's complaints. Unless the respondent court determines that they do, these findings about a third party complainant exceed the scope of Intuitive's waiver, are not subject to disclosure, and may remain redacted from the materials released to Paknad.

Although Intuitive appropriately conceded at oral argument that it had waived attorney work product protection as to Smethurst's purely factual findings, it still maintains that the redacted "findings" in Smethurst's report are not subject to disclosure because even bare credibility determinations were informed by Smethurst's legal judgment and experience—in short, because they are Smethurst's work product. Because Intuitive engaged Smethurst both to investigate Paknad's complaints and " 'to make recommendations to . . . [Intuitive] management' about how to respond" to them (see *Paknad I*, *supra*, H050711), the substance of Smethurst's factual findings bear directly on the adequacy of both the investigations and Intuitive's response. Having put the adequacy of both at issue and thereby waived work product protection, "Intuitive cannot . . . disavow any interrelationship between the investigative findings it commissioned and the response it ultimately chose. If Intuitive chose to disregard the findings of the investigations it commissioned, those findings would be relevant to the claimed adequacy of its response; likewise, if it chose to accept and act on the findings made, the adequacy of its response is enmeshed with the adequacy of those investigations." (*Ibid.*)

Smethurst's factual findings are also relevant to the disputed issue of her independence. In support of its avoidable consequences defense, Intuitive represented in form interrogatory No. 15.1 that it "has thoroughly investigated every allegation that [p]laintiff presented by hiring an *independent, outside investigator* to conduct two investigations." (*Paknad I*, *supra*, H050711, italics added.) Paknad has disputed Smethurst's independence, claiming that with respect to the second investigation, "the outcome, as expected, was skewed to blame [Paknad] and support [Intuitive], [van] Heesewijk, and Collins." (Some capitalization omitted.) Intuitive having put at issue Smethurst's independence and objectivity, Paknad must be given access to Smethurst's factual findings as well so that she has equal opportunity to assess how Smethurst reached those findings, and if warranted, to root out possible bias.

11

### 3. *Additional Redactions*

Apart from the factual findings, Intuitive also proposed limited redactions to other portions of the reports, and to the underlying investigative materials. We will direct the respondent court to conduct further in camera review of the remaining redactions to (1) the two Smethurst reports; and (2) the underlying investigative materials, and to disclose to Paknad information relevant to the scope and adequacy of the Smethurst investigations. (*Box v. Superior Court* (2022) 87 Cal.App.5th 60, 82 [when trial court conducts in camera review but "attempt[s] to answer the wrong question," the "appropriate course is to return the matter to the trial court for further consideration of [the] motion to compel, applying the correct standard"].)[8]

We reiterate that the purpose of further in camera review is not to determine whether any information contained in the Smethurst reports and investigative materials contain core attorney work product (§ 2018.030, subd. (a)), but whether the redacted materials are within the scope of Intuitive's waiver of protection for core attorney work product. At the conclusion of the in camera review, the respondent court will disclose to Paknad any information relevant to the scope and adequacy of the Smethurst investigations—irrespective of whether such information would otherwise qualify for core attorney work protection under section 2018.030.

## III. DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its August 27, 2024 order insofar as it accepted all redactions of the investigator's reports and related investigative material proposed by real parties in interest Intuitive Surgical,

---

[8] As previously noted, the materials Intuitive provided for in camera review were themselves lightly redacted. In advance of the respondent court's further in camera review of the investigator's reports and investigative materials, Intuitive must provide the respondent court with completely unredacted versions of the underlying investigative materials.

Inc., and Intuitive Surgical Operations, Inc.; conduct further in camera review of these materials consistent with the views expressed in this opinion; and enter a new order for the disclosure of all such materials within the scope of real parties' waiver of attorney-client privilege and work product protection.

Costs in this original proceeding are awarded to petitioner Michelle Paknad.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)

Upon issuance of the remittitur, the temporary stay order is vacated.

_____
LIE, J.

WE CONCUR:


_____
GREENWOOD, P. J.




_____
DANNER, J.




*Paknad v. Superior Court*
H052652

Filed 4/17/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MICHELLE PAKNAD,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA,<br><br>    Respondent;<br><br>INTUITIVE SURGICAL, INC., et al.,<br><br>    Real Parties in Interest. | H052652<br>(Santa Clara County<br>Super. Ct. No. 19CV350641)<br><br>ORDER MODIFYING OPINION, CERTIFYING OPINION FOR PUBLICATION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on March 24, 2026, be modified as follows:

1.  On page 6, line 1 of footnote 4, the word "also" is deleted.

2.  On page 8, the first full paragraph, beginning "We recognize," in its fourth sentence beginning "Consistent with that proposition," the word "communication' is changed to "privilege" so the sentence reads:

> Consistent with that proposition, *Wellpoint* makes clear that *both* the attorney-client privilege and work product protection are waived when a party elects to defend itself by putting otherwise privileged information at issue.

3. On page 10, first sentence under subheading II.B.2. *Factual Findings*, first line, the word "the" after "from" and before "Smethurst's reports" is deleted.

4. On page 10, line 1 of footnote 7, the words "report includes" are changed to "reports include" so the first sentence reads:

> To the extent Smethurst's reports include limited findings about a third party complainant, Paknad allows that these are "arguably within . . . the trial court's appropriate discretion to redact" but posits that even those findings "may have had some bearing" on Paknad's complaints.

5. On page 12, last sentence under subheading II.B.3. *Additional Redactions*, the word "product" is added after "work" and before "protection" to read:

> At the conclusion of the in camera review, the respondent court will disclose to Paknad any information relevant to the scope and adequacy of the Smethurst investigations—irrespective of whether such information would otherwise qualify for core attorney work product protection under section 2018.030.

There is no change in the judgment.

The opinion in the above-entitled matter filed on March 24, 2026, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

2

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P. J.

_____

DANNER, J.

*Paknad v. Superior Court*
H052652

Trial Court:       Santa Clara County Superior Court
Superior Court No.:  19CV350641

Trial Judge:       Hon. Evette D. Pennypacker

Counsel:       Aiman-Smith & Marcy, Randall B. Aiman-Smith, Reed W.L. Marcy, Hallie Von Rock, Brent A. Robinson, for Petitioner.

Littler Mendelson, Darren E. Nadel, Michelle Leah Gomez, David C. Gartenberg, Anne Sweeney Jordan, for Intuitive Surgical, Inc., and Intuitive Surgical Operations, Inc., Real Parties in interest.

*Paknad v. Superior Court*
H052652